UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RITA C. HO,

        Plaintiff,

    v.

MARK PINSUKANJANA, et al.,

        Defendants.

Case No. 17-cv-06520-NC

**REQUEST FOR REASSIGNMENT; REPORT & RECOMMENDATION TO DENY MOTION TO STRIKE AND DENY MOTION FOR TEMPORARY RESTRAINING ORDER**

Re: ECF 13, 14, 34

In this dispute over a now-deceased artist's photographic works, Plaintiff moves to strike certain language from three of Defendants' filings, ECF 13, 34, and moves to temporarily restrain Defendants' assets. ECF 14. One cross-defendant has not been served or appeared in the case, which precludes the undersigned magistrate from issuing injunctive relief under 28 U.S.C. § 636. *See Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017). In light of the parties' April 20, 2018, status report and stipulation, ECF 50, the undersigned directs the court clerk to reassign this action to a District Judge, with the recommendation that both motions be denied.

## I.    BACKGROUND

This dispute concerns the photographic works of a now-deceased artist, Mr. Fan Ho. Defendants and cross-claimants Mark Pinsukanjana and Bryan Yedinak worked with Mr. Ho for over ten years to sell his works, and they have continued to sell products

*United States District Court*
*Northern District of California*

related to his works after his death. The parties now disagree on who holds the rights to the negatives, prints, and other media formats of Mr. Ho's photographic works, and they mutually accuse each other of interfering in their respective rights to sell (or not sell) Mr. Ho's photographs.

This lawsuit began after Mr. Ho died when his wife, plaintiff Rita C. Ho, as Successor Trustee of the Ho 2012 Revocable Living Trust ("Plaintiff"), filed a probate action on August 10, 2017, against Pinsukanjana, Yedinak, and their business Architektur, a general partnership doing business as Themes+Projects and formerly doing business as Modernbook (collectively, "Defendants") in the Superior Court of California, County of Santa Clara, Case No. 17-PR-181715. *See generally* Probate Compl. (ECF 1-3). In the probate action, Plaintiff sued Defendants under California state law for (1) wrongful conveyance or transfer of property; (2) breach of contract; (3) intentional use and appropriation of another's name and likeness for commercial benefit; (4) conversion; and (5) financial elder abuse. *Id.*

On October 30, 2017, Defendants filed an answer to the probate complaint and separately filed a cross-complaint for declaratory relief. Cross-Compl. (ECF 1-5). In the cross-complaint, Defendants assert ownership rights over certain derivative works related to Mr. Ho's photographs and request declaratory relief recognizing these ownership rights. Cross-Compl. at 4–5. Because the cross-complaint seeks a declaration of ownership that relies on interpretation of federal copyright law, Plaintiff removed the case to this Court on federal question subject matter jurisdiction grounds.[1]

After removing the case, Plaintiff filed an amended complaint on December 13, 2017, adding claims for copyright infringement, trademark infringement, false designation of origin, unfair competition, unfair trade practices, and cybersquatting, under the

---

[1] Typically, a plaintiff may not remove a case to federal court, even when an answer or counterclaim raises a federal question. *Progressive West Ins. Co. v. Preciado*, 479 F.3d 1014, 1017 (9th Cir. 2007). However, a counter-defendant (the original plaintiff) can remove a counterclaim to federal court if, as here, it is one "relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1454(a).

Case No. 17-cv-06520-NC            2

Copyright Act, 17 U.S.C. §§ 101 et seq., the Lanham Act, 15 U.S.C. §§ 1051 et seq., and California state law. *See generally* Compl. (ECF 7). Plaintiff answered Defendants' cross-complaint. Plfs. Ans. (ECF 12). And Defendants answered Plaintiff's amended complaint, adding a counterclaim against Plaintiff and another party, Sarah Van Ingelgom aka Sarah Greene. Defs. Ans. (ECF 24).

Plaintiff now moves to strike certain language from three of Defendants' filings and moves for an order temporarily restraining Defendants' assets.

## II.    DISCUSSION

### A.    Motion to Strike

Plaintiff moves to strike certain factual allegations from Defendants' cross-complaint, answer and counterclaims, and the declaration of Mark Pinsukanjana in support of Defendants' opposition to Plaintiff's restraining order motion, ECF 29-1. *See* Mot. to Strike (ECF 13); Supp. Mot. to Strike (ECF 34). It is roughly the same language in each of these three documents that Plaintiff seeks to strike. As first asserted in the cross-complaint, Defendants claim:

> What [Mr. Ho] was known for was as a Category 3 film director (pornographic/ violent films) in Hong Kong. . . . On many occasions in the nearly 20 years that we worked with him, [Mr. Ho] would complain to us that his wife, daughter and son were ashamed of him. He complained that he was ignored and often insulted because the family felt that the films that he had directed were shameful. [Mr. Ho] lost all the respect of his family and distant relatives. He would say to us that "he was so lucky to find us [. . .] because none of his family ever took notice of his photographs and never cared about them." He told us that they were just "practical people and do not have any artistic inclination and see only money as an ends to the mean." . . . [Mr. Ho's] immediate family never cared enough to come to the opening reception. [Mr. Ho] was always alone. They did not respect him and they did not expect that the exhibition would make any money. They just thought it was [Mr. Ho's] hobby. Something for [Mr. Ho] to do and get out of the house.

Cross-Compl. ¶¶ 17–19. All three documents make reference to Mr. Ho directing films in Hong Kong that contained violence or nudity, and they make factual assertions casting in a negative light Mr. Ho's relationship with his family and his family's opinions

of Mr. Ho's artistic endeavors. *See id.*; Defs.' Ans. ¶¶ 22–28; Pinsukanjana Decl. ¶¶ 25–29. Plaintiff claims that these allegations are "improper and scandalous," "immaterial to Defendants' claims and defenses," and "designed merely to embarrass and harm Plaintiff and her family." Supp. Mot. to Strike at 4.

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (quotation marks and citation omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). However, motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). If there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits. *See id.*; *see generally* 5A Wright & Miller, Federal Practice and Procedure § 1380 (2014). Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft Co.*,618 F.3d 970, 973 (9th Cir. 2010); *accord In re Arris Cable Modem Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *5 (N.D. Cal. Jan. 4, 2018).

Here, the language sought to be stricken could bear on the parties' substantive claims and is not so impertinent or scandalous that it must be removed from consideration. For example, the relationships Mr. Ho had with his own family and with Pinsukanjana and Yedinak could be relevant in determining the contractual arrangement (or lack thereof) under which Pinsukanjana and Yedinak sold Mr. Ho's works for over a decade, and potentially factor into Plaintiff's unjust enrichment damages theory. The Court is not making any finding as to the veracity or weight of the statements Plaintiff seeks to strike, but rather finds that they could be relevant to key disputed issues. Moreover, while Mr.

Case No. 17-cv-06520-NC                4

Ho's family might understandably feel hurt or offended by these statements, they are not so scandalous that they must be purged from the record. The undersigned therefore recommends that the motion to strike be denied.

### B.    Motion for a Temporary Restraining Order

Plaintiff also moves for a temporary asset restraining order. Mot. for TRO (ECF 14). As relief, Plaintiff requests "(1) an order seizing and placing into the custody of the Court all film negatives, prints, and digitized versions of Fan Ho works in Defendants' possession, custody, or control from which copies of Fan Ho works could be made; and (2) a temporary restraining order preventing the fraudulent transfer of Defendants' assets." *Id.* at 21. Defendants oppose the motion. Defs.' Opp. to TRO (ECF 29).

As a form of preliminary injunctive relief, a temporary restraining order is an "extraordinary remedy" that is "never granted as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A request for a temporary restraining order is evaluated using the same factors that generally apply to a preliminary injunction. *See Stuhlbarg Int'l. Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Thus, to obtain preliminary relief, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see MacDonald v. Dynamic Ledger Sols., Inc.*, No. 17-cv-07095-RS, 2017 WL 6513439, at *2 (N.D. Cal. Dec. 20, 2017).

The Court is unconvinced that Plaintiff has established any of these factors. First, it is difficult to forecast the merits of the case, because the facts are only beginning to be unearthed and numerous legal issues are far from resolved. For example, to prove the asserted copyright infringement claim, Plaintiff will have to establish ownership of a valid copyright over Mr. Ho's works and show copying by Defendants of constituent elements of the work that are original. *See Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Phantomalert, Inc. v. Google Inc.*, No. 15-cv-03986-JCS, 2016 WL 879758, at *8 (N.D. Cal. Mar. 8, 2016). Defendants assert that they do not possess any of

Mr. Ho's original works, and that the works they do possess are derivative and independently copyrightable. *See* Defs.' Opp. to TRO at 6–7. Plaintiff offers no factual basis to contradict Defendants' assertion that they do not possess any original works, and determining the ownership and proof of copying of the allegedly derivative works requires far more factual information than Plaintiff has provided.

Second, Plaintiff has not established a likelihood of irreparable harm. In the moving papers, Plaintiff suggests that Defendants have and will continue to cheapen or undercut the value of Mr. Ho's works without injunctive relief, because Plaintiff is currently unable to control for the quality and quantity of product output. Mot. for TRO at 17. Plaintiff also argues that the Trust is being deprived of its right to select which of Mr. Ho's works may be commercially exploited and is being denied the opportunity to discover other copyrightable works in Defendants' possession. *Id.* However, these assertions are unsupported by the factual record and, more importantly, describe economic harm that is easily reparable through money damages. A reduction in value or missed opportunity for commercialization is precisely the type of harm that money, not injunctive relief, must remedy. When pressed on this point in court, Plaintiff's counsel argued that originals are by their nature irreplaceable, but also acknowledged that artists' original works can "command huge sums of dollars" and have "the greatest draw in the marketplace and the greatest value." Hearing on Mot. for Asset TRO (February 28, 2018).  It is worth remembering that U.S. copyright law achieves its goal of stimulating "artistic creativity" for the public good by "secur[ing] a fair return for an 'author's' creative labor." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)—i.e., by monetizing creativity. In this copyright lawsuit, Plaintiff has not demonstrated a likelihood of harm that is not compensable with money.

It is not necessary to reach the remaining injunctive relief factors, because Plaintiff has not established either a likelihood of success on the merits or a likelihood of irreparable harm. The undersigned recommends that the motion for injunctive relief be denied.

Case No. 17-cv-06520-NC                  6

United States District Court<br>Northern District of California

III.   CONCLUSION

Because there is one non-consenting party, the court clerk is directed to reassign this action to a District Judge. The undersigned recommends that Plaintiff's motion to strike be denied because Plaintiff fails to establish that the disputed language in Defendants' cross-complaint, answer, and Pinsukanjana declaration is "redundant, immaterial, impertinent, or scandalous" under Federal Rule of Civil Procedure 12(f). The undersigned recommends that Plaintiff's motion for injunctive relief be denied because Plaintiff has not established the factual or legal foundation necessary to support the extraordinary relief of restraining Defendants' assets.

Any party may object to this report and recommendation within 14 days. *See* Fed. R. Civ. P. 72(a).

**IT IS SO ORDERED.**

Dated:  April 24, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California

Case No. 17-cv-06520-NC                    7