UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RITA C HO,

Plaintiff,

v.

MARK PINSUKANJANA, et al.,

Defendants.

Case No. 17-cv-06520-PJH

**ORDER**

Re: Dkt. Nos. 96, 98, 99, 100, 104

On May 29, 2019, a score of motions came on for hearing before this court. Plaintiff Rita C. Ho (individually, the "plaintiff") and counter-defendant Claudia S. Ho, Rita Ho's daughter (together with Rita Ho, the "Ho Family"), appeared through their counsel, Allen Baden and Benjamin Schwartz. Allen Baden also made a special appearance on behalf of the counter-defendant Sarah Greene, who is a resident of Hong Kong and who filed a motion challenging service. Defendants and counter-plaintiffs Mark Pinsukanjana, Bryan Yedinak, and Architektur, dba Themes + Projects, formerly dba as Modernbook ("Modernbook," together with Pinsukanjana and Yedinak, the "defendants" or "counter-plaintiffs") appeared through their counsel, Hillary Johns. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

Plaintiff Rita Ho, Successor Trustee of the Ho 2012 Revocable Living Trust, was married to the now-deceased photographer Fan Ho (the "decedent"). During his lifetime, the decedent created a body of photographic works of Hong Kong in the 1950s and 1960s (the "Works"). These Works, and so called "derivative works," form the basis of

1  the present dispute.

2      Before his death in June 2016, the decedent had a long-lasting business

3  relationship with defendants to sell and publish the Works through the individual

4  defendants' art gallery, Modernbook.  Because the photographs were taken over 50

5  years ago, at a minimum, the decedent and the defendants were required to digitize and

6  touch-up the photographs before they were published.  According to defendants,

7  however, the editing of the decedent's Works went beyond mere digitization and clean-

8  up, and, in fact, rose to the level of creating "derivative works" that independently qualify

9  for copyright protection under the Copyright Act.  Plaintiff disagrees.

10      On the other hand, the parties agree that the decedent and the defendants

11  operated under an oral agreement for at least part of their business relationship.  The

12  parties also agree that the decedent and the defendants signed two contracts during the

13  many years that they worked together, a Publishing Agreement, signed in March 2006,

14  and a Representing Agreement, signed in October 2012.  See Dkt. 104-7, Ex. I (the

15  "Publishing Agreement"), Ex. IV (the "Representing Agreement").

16      The Publishing Agreement called for the publication of a first edition of a

17  monograph comprised of the decedent's photographs.  Ex. I.  The Publishing Agreement

18  also set forth the decedent and the defendants' fee agreement, various rights, and

19  various limitations on the publication of further editions.  Id.  The individual defendants

20  signed the Publishing Agreement as owners of Modernbook.  Id.

21      Though it is unclear if there is a dispute on the issue, it appears that the decedent

22  and the defendants executed the October 2012 Representing Agreement to codify the

23  decedent and the defendants' business relationship. Ex. IV.  The impetus of the

24  agreement appears to be that the defendants had fallen behind on payments due to the

25  decedent for sales of his Works and related-works pursuant to oral agreements between

26  the decedent and the defendants.  See Id. ¶ 1.H.  Accordingly, the Representing

27  Agreement addressed the distribution of monies from Modernbook's futures sale of works

28  related to the decedent and set forth a payment schedule to pay off overdue balances.

2

United States District Court
Northern District of California

1  Id. §§ 1.E, 1.H.  The Representing Agreement also contains a termination clause that

2  provides that either party may terminate the agreement with 10 days written notification.

3  Id. § 3.  Upon termination, Modernbook was required to pay the decedent in full and to

4  return all of the decedent's art work.  Id. §§ 1.B, 3.

5  Also in 2012, the individual defendants, signing as "Modernbook as Agent for Ho

6  Fan", executed a written agreement with Asia One Photobook Centre Ltd. HK ("Asia

7  One").  Dkt. 104-7, Ex. III.  Sarah Greene signed that agreement as Asia One's

8  representative.  Id.  While the details are again unclear, Greene now appears to have a

9  business relationship with Rita Ho related to the distribution of the decedent's Works.

10  In October 23, 2015, the decedent terminated the Representing Agreement.  Dkt.

11  104-7, Ex. IX (the "Termination Notice").

12  Lastly, in November 2016, the defendants entered into a licensing agreement with

13  Samsung that purportedly granted Samsung the right to use two Fan Ho photographs as

14  a television screensaver.  Dkt. 104-7, Ex. X (the "Samsung Licensing Agreement").

15  Pinsukanjana signed that agreement for "Themes + Projects on behalf of Fan Ho's

16  estate."  Id.

17  After the decedent's death, Rita Ho filed this copyright and breach of contract-

18  related suit against the defendants asserting the following eleven causes of action: (i)

19  Copyright Infringement under California law and the federal Copyright Act, 17 U.S.C.

20  § 201(d)(1); (ii) False Designation of Origin, Section 43(a) of the Lanham Act, 15 U.S.C.

21  § 1125; (iii) Federal Unfair Competition, Section 43(a) of the Lanham Act, 15 U.S.C.

22  § 1125; (iv) Cybersquatting, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125; (v)

23  Common Law Trade Mark Infringement; (vi) Unfair Business Practices, Cal. Bus. & Prof.

24  Code § 17200 (the "UCL"); (vii) Common Law Unfair Competition; (viii) Breach of

25  Contract; (ix) Wrongful Transfer of Property by Concealment and Undue influence, Cal.

26  Probate Code § 850; (x) Conversion; and (xi) Financial Elder Abuse, Cal. Welfare

27  § 15610.30.  Dkt. 7.

28  On February 9, 2018, defendants answered and asserted nine counterclaims for:

3

1  (i) Intentional Interference with Contractual Relationship against the counter-defendants;

2  (ii) Declaratory Judgment of copyright over the derivative works against Rita Ho; (iii)

3  Declaratory Judgment that the Representing Agreement is null and void to the extent it

4  purports to convert ownership of the derivative works, and related copyrights, from

5  defendants to the decedent against Rita Ho; (iv) Declaratory Judgment that the

6  Termination Notice is "null and void," and for continuation of the Representing Agreement

7  against Rita Ho; (v) Breach of Contract against Greene; (vi) Fraud against the counter-

8  defendants; (vii) Breach of Fiduciary Duty against the counter-defendants; (viii) Unjust

9  Enrichment against the counter-defendants; (ix) Unfair Competition against the counter-

10  defendants; and (x) Quantum Meruit against Rita Ho.  Dkt. 24.

11  On February 27, 2018, Rita Ho and Claudia Ho, the only counter-defendants who

12  had been served, filed their Answer to the counterclaims.  Dkt. 40.

13  The following motions are now pending before the court: (1) Greene's motion to

14  quash service and her related motion to dismiss; (2) The Ho Family's motion to dismiss

15  Greene for failure to prosecute and to dismiss certain of defendants' counterclaims under

16  Rule 12(b)(6); (3) Defendants' motion for judgment on the pleadings under Rule 12(c); (4)

17  Plaintiff's motion for summary judgment on seven of her claims and on defendants'

18  second counterclaim; and (5) Defendants' motion for summary judgment on two of

19  plaintiff's claims.

20  **DISCUSSION**

21  **A.    Greene's Motion To Quash Service and Motion to Dismiss**

22  **1.    Motion to Quash Service**

23  The parties agree that counter-plaintiffs attempted to personally serve Greene in

24  Hong Kong.  Greene now moves to quash that service, arguing that it was ineffective.

25  Proper service of process, or waiver thereof, is necessary for the court to "render

26  any judgment against the defendant's person or property."  SEC v. Ross, 504 F.3d 1130,

27  1138–39 (9th Cir. 2007).  "Once service is challenged, plaintiffs bear the burden of

28

United States District Court
Northern District of California

1  establishing that service was valid under Rule 4." Brockmeyer v. May, 383 F.3d 798, 801

2  (9th Cir. 2004).

3        Rule 4(f) of the Federal Rules of Civil Procedure governs service of process upon

4  a foreign individual defendant.  Service may be obtained "by any internationally agreed

5  means of service that is reasonably calculated to give notice, such as those means

6  authorized by the Hague Convention."  Fed. R. Civ. P. 4(f)(1).  Service pursuant to the

7  Hague Convention is mandatory when serving a foreign defendant in a signatory country

8  to the Hague Convention. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694,

9  699, 705 (1988).  Here, both "the United States and China are [ ] signatories of the

10 Hague Convention," so the Hague Convention applies. CSPC Dophen Corp. v. Zhixiang

11 Hu, No. 217CV1895MCEDBPS, 2018 WL 6184617, at *11 (E.D. Cal. Nov. 27, 2018);

12 HCT Packaging Inc. v. TM Int'l Trading Ltd., No. CV1308443RGKSHX, 2014 WL

13 12696776, at *6 (C.D. Cal. Mar. 10, 2014) ("Hong Kong and the United States are both

14 signatories to the Hague Convention so the rules of the Hague Convention apply.").

15       Counter-plaintiffs argue that they effected personal service in compliance with the

16 Hague Convention.  Article 10 of the Hague Convention only authorizes personal service

17 if not objected to by the signatory country. HCT Packaging Inc., 2014 WL 12696776, at

18 *6 ("Article 10(b) of the Hague Convention allows for personal service unless the State of

19 destination objects."); see Convention on the Service Abroad of Judicial and Extrajudicial

20 Documents in Civil or Commercial Matters (the "Hague Convention"), art. 10(b), (c), Nov.

21 15, 1965, 20 U.S.T. 361. (allowing "judicial officers, officials, or other competent persons

22 to effect service").  Critically, China has objected to subsections (b) and (c) of Article 10.

23 See Delinger v. Chinadotcom Corp., 2 Cal. Rptr. 3d 530, 538 (Ct. App. 2003) (noting

24 Hong Kong objected to subsections (b) and (c) but not subsection (a)); HCT Packaging,

25 2014 WL 12696776, at *6 ("Hong Kong objected to article 10(b).").  Thus, Article 10 does

26 not authorize counter-plaintiffs to personally serve Greene.

27       Alternatively, counter-plaintiffs might have shown that Hong Kong's internal rules

28 authorize personal service. See Hague Convention, art. 19 ("To the extent that the

5

United States District Court
Northern District of California

1   internal law of a contracting State permits methods of transmission, other than those

2   provided for in the preceding articles, . . . the present Convention shall not affect such

3   provisions."). Though counter-plaintiffs make a passing reference to Article 19, they

4   provide no information about Hong Kong's local rules of service. Accordingly, the court

5   cannot find that counter-plaintiffs have shown service was properly effected under Article

6   19 of the Hague Convention.[1]

7       Because counter-plaintiffs have failed to show service was properly effected on

8   Greene—a fact that counter-plaintiffs' counsel all but conceded during the hearing—the

9   court GRANTS Greene's motion and QUASHES service.

10          **2.      Motion to Dismiss**

11      Having found that Greene was not properly served, the court turns to whether

12  Greene should be dismissed for counter-plaintiffs' failure to effectuate timely service.

13      "Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant to move for

14  dismissal due to insufficient service of process." Moody v. Finander, No. 09-CV-0892-

15  LAB BGS, 2011 WL 4479074, at *2 (S.D. Cal. Aug. 26, 2011), report and

16  recommendation adopted, No. 09CV0892-LAB JMA, 2011 WL 4479042 (S.D. Cal. Sept.

17  23, 2011). If the plaintiff is unable to satisfy its burden of demonstrating effective service,

18  the court has discretion to either dismiss the action or retain it, in order to provide plaintiff

19  with the opportunity to properly serve the defendant. See Stevens v. Sec. Pac. Nat'l

20  Bank, 538 F.2d 1387, 1389 (9th Cir. 1976).

21      Although the Federal Rules do not explicitly exempt foreign defendants from the

22  90–day deadline governing service, they do exempt from this deadline service in a

23  foreign country conducted pursuant to Rule 4(f). See Fed. R. Civ. P. 4(m). And "Rule

24  4(f) [itself] does not impose any specific time limits." Rudolph v. UT Starcom, Inc., No. C

25  07-04578 SI, 2009 WL 248370, at *3 (N.D. Cal. Feb. 2, 2009). Thus, service under Rule

26

27  _____

    [1] Counter-plaintiffs have also failed to meet their burden because the parties have
28  submitted contradictory declarations regarding the circumstances of service on Greene.
    See Dkts. 96-2, 96-3, 109-2, 109-4.

6

1   4(f) need not be effected within 90 days because the "strict time limits imposed by Rule

2   4(m) do not apply." Id. That said, a plaintiff's time to serve a defendant residing in a

3   foreign country is not unlimited and a court may dismiss a defendant if plaintiff does not

4   pursue service in a "diligent fashion." Gines Dominguez v. Osorio, No. CV 16-689 PSG

5   (GJSX), 2018 WL 7458522, at *5 (C.D. Cal. Oct. 18, 2018) (collecting cases).

6           Here, 15 months have passed since counter-plaintiffs named Greene as a

7   counter-defendant in this action. See Dkt. 24. Counter-plaintiffs have failed to effect

8   service and are apparently no closer to serving Greene than they were 15 months ago.

9   Despite the court specifically providing counter-plaintiffs' counsel an opportunity to

10  explain that long delay, counter-plaintiffs' counsel failed to provide a coherent

11  explanation, much less show that service had been pursued diligently.

12          Accordingly, the court DISMISSES Sarah Greene from this action WITHOUT

13  PREJUDICE. As counterclaim five is asserted only against Greene, that counterclaim is

14  also DISMISSED WITHOUT PREJUDICE.[2]

15  **B.      The Ho Family's Motion To Dismiss Defendants' Counterclaims**

16          Next, the court turns to the Ho Family's motion to dismiss six of defendants'

17  counterclaims pursuant to Rule 12(b)(6). In general terms, the motion argues that certain

18  counterclaims must be dismissed because those claims are properly brought by

19  Modernbook, not the individual defendants or Architektur. The Ho Family further argues

20  that because Modernbook's status as a California corporation has been suspended by

21  the California Franchise Tax Board ("FTB suspended"), Modernbook may not prosecute

22  this action and, therefore, the counterclaims must be dismissed.

23          The court need not reach the merits of that argument because the motion is

24  extraordinarily untimely. By its own terms, Rule 12(b) prohibits the motion: "A motion

25  asserting any" Rule 12(b) defense "must be made before pleading if a responsive

26  pleading is allowed." Fed. R. Civ. P. 12(b); Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,

27  _____

28  [2] In light of the court's determination on that issue, the Ho Family's motion to dismiss
    Greene is DENIED as moot.

7

1   855 F.2d 1470, 1474 (9th Cir. 1988).  The Ho Family filed an Answer to defendants'

2   counterclaims on February 27, 2018.  Dkt. 40.  Now, nearly 15 months after the fact, the

3   Ho Family moves to dismiss pursuant to Rule 12(b)(6).  The motion is therefore untimely.

4   Further, the Ho Family has not requested the court convert the Rule 12(b)(6) motion into

5   a Rule 12(c) motion.  Nor is the court inclined to do so sua sponte because of "the long

6   delay in bringing the [m]otion and the extensive litigation that already has occurred in this

7   case."  United States v. Bus. Recovery Servs., LLC, No. CV11-390-PHX-JAT, 2012 WL

8   1192938, at *2 (D. Ariz. Apr. 10, 2012) (refusing to convert untimely Rule 12(b)(6) motion

9   into Rule 12(c) motion).  "The purpose of proper pleading is to give litigants sufficient

10  notice of the claims against them."  Id.  After more than a year of discovery and with

11  several motions pending before the court, there can be little doubt that the Ho Family has

12  sufficient notice of the issues at stake in this litigation.  Accordingly, the court DENIES the

13  Ho Family's rule 12(b)(6) motion.[3]

14  **C.    Defendants' Motion For Judgment On the Pleadings**

15       Defendants move for judgment on the pleadings against all of plaintiff's claims.  In

16  general, defendants make two overarching arguments: (1) Plaintiff's copyright

17  infringement claim fails because the complaint does not allege copyright registration and

18  plaintiff's other claims are preempted by the Copyright Act; and (2) Plaintiff's Lanham Act

19

20  [3] At least two further considerations independently weigh in favor of denying the motion.
    First, under California law, a "lack of capacity" to sue premised on an FTB suspension "is
21  not a jurisdictional defect and is waived if not properly raised."  Ctr. for Self-Improvement
    & Cmty. Dev. v. Lennar Corp., 173 Cal. App. 4th 1543, 1552 (2009).  Here, the Ho Family
22  did not assert the defense in their Answer, see Dkt. 40, and, in fact, plaintiff filed this
    litigation against the individual defendants and Architektur—not Modernbook—based
23  upon the same contracts the Ho Family now argues the defendants may not sue upon.
    See In re Roussos, No. CV 16-8612-JFW, 2017 WL 1423710, at *6 (C.D. Cal. Apr. 20,
24  2017) (finding waiver where the party "happ[ily] [ ] ignor[ed] . . . suspended status during
    the time" it was convenient to do so).  Second, "the capacity of the plaintiff to sue is not
25  an element of a cause of action and the plaintiff corporation need not allege it is qualified
    to do business in this state or that it has paid all state taxes."  Ctr. For Self-Improvement,
26  173 Cal. App. 4th at 1552-53.  Thus, the Ho Family's motion is more properly brought as
    a motion for summary judgment—a fact that the Ho Family implicitly recognizes by
27  premising their motion on asserted facts outside of the countercomplaint.  See Dkt. 98-2.
    The Ho Family may not circumvent this court's scheduling order, see Dkt. 67, by dressing
28  up a second motion for summary judgment as an untimely Rule 12(b)(6) motion.

1  claims fail because plaintiff lacks standing, the complaint does not identify a protectable

2  mark, and there is no possibility of confusion.  As more of an aside, defendants argue

3  that plaintiff's claim for conversion fails because the complaint does not identify the

4  allegedly converted property and because defendants returned some images.

5  As was the case with the Ho Family's motion to dismiss, the court finds no cause

6  to reach the merits of defendants' motion.  Defendants filed their motion for judgment on

7  the pleadings on the same day as dispositive motions were due.  See Dkt. 100; see also

8  Dkt. 67.  As defendants simultaneously filed a motion for summary judgment, Dkt. 99, the

9  late-filed motion for judgment on the pleadings represents nothing more than an attempt

10  to circumvent this court's order permitting only one summary judgment motion per party.

11  See Dkt. 67.  For that reason defendants' motion for judgment on the pleadings is

12  DENIED.

13  **D.      The Parties' Cross Motions For Summary Judgment**

14  Lastly, the court turns to the parties' cross motions for summary judgment.

15  Plaintiff moves for summary judgment on defendants' second counterclaim—for

16  declaratory judgment re copyright over the derivative works—and seven of her own

17  claims: (i) Copyright Infringement; (iv) Cybersquatting, (vi) Unfair Business Practices; (vii)

18  Breach of Contract; (ix) Wrongful Transfer of Property by Concealment and Undue

19  Influence; (x) Conversion; and (xi) Financial Elder Abuse.  Defendants move for summary

20  judgment on plaintiff's ninth and eleventh causes of action.  The court DENIES both

21  motions in their entireties.

22  **1.      Legal Standard**

23  Summary judgment is proper where the pleadings, discovery, and affidavits show

24  that there is "no genuine dispute as to any material fact and the movant is entitled to

25  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may

26  affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

27  (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

28  reasonable jury to return a verdict for the nonmoving party.  Id.

1    The moving party for summary judgment bears the initial burden of identifying

2    those portions of the pleadings, discovery, and affidavits which demonstrate the absence

3    of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

4    Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  When

5    the moving party has met this burden of production, the nonmoving party must go beyond

6    the pleadings and, by its own affidavits or discovery, set forth specific facts showing that

7    there is a genuine issue for trial. Id.  If the nonmoving party fails to produce enough

8    evidence to show a genuine issue of material fact, the moving party wins. Id.

9    At summary judgment, the court must view the evidence in the light most favorable

10   to the nonmoving party: if evidence produced by the moving party conflicts with evidence

11   produced by the nonmoving party, the judge must assume the truth of the evidence set

12   forth by the nonmoving party with respect to that fact. See Tolan v. Cotton, 134 S. Ct.

13   1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

14   In addition, and particularly relevant to the present motions, the moving party

15   "must explain its summary judgment arguments and cannot rely on the Court to sift

16   through the countless exhibits to manufacture a summary judgment argument" for the

17   moving party, Digital Reg of Texas, LLC v. Adobe Sys., Inc., No. C 12-1971 CW, 2014

18   WL 3883437, at *1 (N.D. Cal. Aug. 6, 2014), based on the moving party's vague

19   references to purportedly relevant law, see Indep. Towers of Washington v. Washington,

20   350 F.3d 925, 929 (9th Cir. 2003) (A party must "present the court with legal arguments

21   to support its claims.").  The reason for this requirement is obvious: "[J]udges are not like

22   pigs, hunting for truffles buried in briefs." Id.  The "adversarial system relies on the

23   advocates to inform the discussion and raise the issues to the court," in a manner that is

24   both "specific" and "distinct." Id.

25   **2.    Analysis**

26   **a.    Counterclaim Two: Declaratory Judgment re Copyright**

27   Plaintiff moves for summary judgment on defendants' second counterclaim for

28   declaratory judgment of copyright over the derivative works.  The derivative works in this

United States District Court
Northern District of California

1 case are alleged to be some unidentified subset of the photographs edited or created

2 after the decedent and the defendants began their business relationship.

3      The Ninth Circuit has explained:

4         A "derivative work" is defined in the Copyright Act as a work

5 "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" a preexisting work and "consist[s] of

6 editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of

7 authorship." 17 U.S.C. § 101. A derivative work is copyrightable when it meets two criteria: (1) "the original

8 aspects of a derivative work must be more than trivial," and (2) "the original aspects of a derivative work must reflect the

9 degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that

10 preexisting material." This is known as the <u>Durham</u> test. Both prongs arise out of Copyright's basic focus on originality. The

11 first prong asks "whether the derivative work is original to the author and non-trivial" and the second prong ensures that the

12 derivative work author does not hinder the original copyright owner's ability to exercise all of its rights.

13 <u>ABS Entm't, Inc. v. CBS Corp.</u>, 908 F.3d 405, 414 (9th Cir. 2018) (citations omitted).

14      As neither party addresses the second prong, the court focuses on the first prong

15 of the analysis and finds that disputes of material fact exist. For example, in support of

16 her motion, plaintiff presents the declaration of Jerry Lee, a photographer who worked

17 with the decedent to digitize and retouch the Works. <u>See, e.g.</u>, Dkt. 104-4 ¶¶ 5-7, 9, 11.

18 As relevant here, Lee testifies that, at all times relevant to this litigation, he worked

19 closely with the decedent to make any substantive changes to the Works and that

20 Modernbook personnel did not perform any substantive post-scanning processing or

21 editing of the Works. <u>Id.</u> ¶¶ 9-16, 21-25, 28, 30-34. In opposition, the individual

22 defendants submitted their own declarations that contradict Lee's testimony. In general,

23 Pinsukanjana and Yedinak testify that they performed an "extensive amount of work" on

24 the Works, that Lee's contribution was minimal, and that Lee did not possess the

25 necessary expertise to perform the editing he claims to have completed. Dkt. 117-1 ¶ 1;

26 Dkt. 117-2 ¶ 1.

27      As at least one dispute of material fact exists regarding whether any "derivative

28 work" exists and whether defendants contributed to the creation of any derivative work,

United States District Court
Northern District of California

1 | the court DENIES this part of plaintiff's motion for summary judgment.

2 | **b.    Claim One: Copyright Infringement**

3 | Plaintiff next moves for summary judgment on her first cause of action for

4 | copyright infringement.

5 | To prove copyright infringement, a plaintiff must prove "two things: (1) that [it]

6 | owns a valid copyright in [the Subject Work], and (2) that [Defendants] copied protected

7 | aspects of [the Subject Work]'s expression." Malibu Textiles, Inc. v. Label Lane Int'l, Inc.,

8 | 922 F.3d 946, 951 (9th Cir. 2019) (alterations in original).  In addition, the Supreme Court

9 | has recently held that under 17 U.S.C. § 411(a), a plaintiff may not maintain a copyright

10 | infringement claim unless she possesses a registered copyright over the work-in-suit.

11 | Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, —— U.S. ——, 139 S.Ct. 881,

12 | 887, 203 L.Ed.2d 147 (2019); see Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980,

13 | 988 (9th Cir. 2017) ("[Plaintiff] was required to show registration as an element of an

14 | infringement claim.").

15 | Here, plaintiff has submitted no evidence suggesting that she possesses a

16 | registered copyright over any of the decedent's Works.  Indeed, plaintiff's papers

17 | concede that point.  Nor does plaintiff's counsel's belated representation—unsupported

18 | by any evidence submitted to the court—that the Copyright Office has registered one

19 | unidentified photograph save plaintiff's motion.  As an initial matter, plaintiff has failed to

20 | present any evidence of that fact.  Relatedly, plaintiff has failed to identify which

21 | photograph has been registered.  And, putting aside those two problems, plaintiff has

22 | failed to provide evidence connecting that unidentified registered work with an act of

23 | infringement.

24 | Accordingly, plaintiff's motion for summary judgment on her first claim is DENIED.

25 | **c.    Claim Four: Cybersquatting**

26 | Plaintiff's fourth cause of action alleges that defendants' websites—

27 | fanhophotography.com and a related Facebook page—constitute cybersquatting under

28 | § 43(d) of the Lanham Act.  Plaintiff contends that the websites are an attempt by

United States District Court
Northern District of California

1 | defendants to trade on the goodwill associated with plaintiff's "FAN HO" mark.

2 |     "To establish civil liability under the Anti-Cybersquatting Consumer Protection Act

3 | (the "ACPA"), 15 U.S.C. § 1125(d), a plaintiff must demonstrate that (1) the defendant

4 | registers, traffics in, or uses a domain name that is identical or confusingly similar to a

5 | distinctive trademark; and (2) the defendant has a bad faith intent to profit from the mark."

6 | Guo v. 8BO.COM, No. 13-CV-05299 NC, 2015 WL 4914731, at *3 (N.D. Cal. July 15,

7 | 2015) 15 U.S.C. § 1125(d)(1)(A); Lahoti v. Vericheck, Inc., 586 F.3d 1190, 1202 (9th Cir.

8 | 2009) ("A finding of bad faith intent is an essential prerequisite to finding an ACPA

9 | violation[.]").

10 |     Plaintiff has failed to present evidence in support of either element. First, plaintiff

11 | presents no evidence—or even any discussion—about whether the "FAN HO" mark is

12 | "distinctive." Lahoti, 586 F.3d at 1197 ("Distinctiveness is also required to sustain an

13 | ACPA claim."); Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 877 (9th Cir. 1999) ("[A]

14 | mark that is 'primarily merely a surname' is not protectable unless it acquires secondary

15 | meaning." (quoting 15 U.S.C. § 1052(e)(4)) ); Tana v. Dantanna's, 611 F.3d 767, 774

16 | (11th Cir. 2010) ("[O]ne who claims federal trademark rights in a name"—"both surnames

17 | and first names"—"must prove that the name has acquired a secondary meaning.").

18 |     Second, plaintiff does not submit sufficient evidence to support the bad faith

19 | element of cybersquatting. The ACPA "enumerate[s] nine nonexclusive factors for courts

20 | to consider in determining whether bad faith exists." Lahoti, 586 F.3d at 1202. To show

21 | bad faith, plaintiff points only to a screenshot of defendants' website purportedly showing

22 | that defendants have held flash sales of the decedent's Works. The court finds that that

23 | fact alone does not carry plaintiff's burden to show defendants' possessed a bad faith

24 | intent to profit from the mark.

25 |     Because plaintiff has failed to carry her burden, the court DENIES plaintiff's motion

26 | with respect to her cybersquatting claim.

27 |         **d.    Claim Six: Unfair Business Practices under the UCL**

28 |     Whereas plaintiff's complaint asserts only a single theory for unfair competition—

1 defendants use of the FAN HO mark, see Dkt. 7 ¶¶ 97-99—plaintiff's motion attempts to

2 prove four UCL violations: (1) defendants have held themselves out as the exclusive

3 agent of the decedent and his Works after the Termination Notice; (2) defendants

4 fraudulently signed the Samsung Licensing Agreement as an agent of Fan Ho after the

5 decedent terminated the Representing Agreement; (3) defendants continue to operate

6 various websites and social media platforms that advertise and sell the Works; and (4)

7 defendants continue to operate Modernbook even though it has an inactive seller's permit

8 and is FTB suspended.

9 The UCL "prohibits practices that are either 'unfair,' or 'unlawful,' or 'fraudulent.' "

10 Pastoria v. Nationwide Ins., 112 Cal. App. 4th 1490, 1496 (2003).  The UCL incorporates

11 other laws and treats violations of those laws as unlawful business practices

12 independently actionable under state law.  Chabner v. United Omaha Life Ins. Co., 225

13 F.3d 1042, 1048 (9th Cir. 2000).  "A business practice, however, may be unfair or

14 fraudulent in violation of the UCL even if the practice does not violate any law."

15 Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).  In addition to proving the

16 practice is unfair, unlawful, or fraudulent, to prove a UCL claim, a private plaintiff needs to

17 have "suffered injury in fact and [ ] lost money or property as a result of the unfair

18 competition."  Cal. Bus. & Prof. Code § 17204.  "This provision requires [a plaintiff] to

19 show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under

20 Article III of the Constitution, and also requires a 'causal connection' between [the

21 defendants'] alleged UCL violation and her injury in fact."  Rubio v. Capital One Bank,

22 613 F.3d 1195, 1203–04 (9th Cir. 2010).

23 Here, the court finds plaintiff's motion must be DENIED.  Though perhaps couched

24 in different terms, plaintiff's first three theories of UCL liability either assume that no

25 derivative works have been created—a proposition for which a material dispute of fact

26 exists—or lack evidentiary support.  Plaintiff's fourth theory fails because plaintiff has not

27 shown she has been harmed by Modernbook's continued operation as an FTB

28

14

1 suspended corporation with an inactive seller's permit.[4]

2 Accordingly, because plaintiff has failed to carry her burden, the court DENIES

3 plaintiff's motion with respect to her UCL claim.

4 **e.    Claim Eight: Breach of Contract**

5 Plaintiff argues that defendants have breached the October 2012 Representing

6 Agreement and, therefore, summary judgment should be granted on her breach of

7 contract claim.  Specifically, plaintiff contends that defendants: (1) breached § 1.D-F, H,

8 K-L of the Representing Agreement by failing to timely pay the decedent commissions

9 and detail their sales of the Works; (2) breached § 3 of the Representing Agreement by

10 refusing to accept the decedent's termination notice in October 2015 and by failing to pay

11 decedent all due balances; and (3) continued to sell the decedent's Works after the

12 October 2015 Termination Notice, while pocketing the associated revenues.

13 To prove a breach of contract claim, the plaintiff must show "[1] the existence of a

14 contract, [2] his or her performance of the contract or excuse for nonperformance, [3] the

15 defendant's breach, and [4] resulting damage." Mora v. U.S. Bank, N.A., No. 11–6598

16 SC, 2012 WL 2061629, *6 (N.D. Cal. June 7, 2012).

17 At minimum, the court finds that plaintiff has failed to meet her summary judgment

18 burden by failing to provide any admissible evidence showing defendants breached the

19 Representing Agreement.  For that reason, plaintiff's motion for summary judgment on

20 her breach of contract claim is DENIED.

21 **f.    Claims Nine and Eleven: Wrongful Transfer of Property By**

22 **Concealment & Undue Influence and Financial Elder Abuse**

23 Plaintiff next argues that summary judgment should be granted on claims nine and

24 eleven because defendants wrongfully discarded the property owned by the Trust via

25

26

27 [4] Moreover, though plaintiff attaches a document that plaintiff asserts shows
Modernbook's seller's permit is inactive, see Dkt. 104-7, Ex. XIII, that document is
illegible.  Accordingly, the court cannot find that Modernbook has an inactive seller's
28 permit, much less that the seller's permit was inactive at a time relevant to this litigation.

1   flash sales of the Works on defendants' websites and other third-party websites and

2   because defendants unlawfully executed the Samsung Licensing Agreement on behalf of

3   the decedent's estate.  Defendants also move for summary judgment on these two

4   causes of action, claiming that plaintiff has no evidence in support of either claim.

5          "[A] claim for financial elder abuse requires one of the following: (1) taking of

6   property for a 'wrongful use,' (2) taking of property with intent to defraud, or (3) taking of

7   property by 'undue influence.'" Garrison et al. v. Ringgold et al., No. 19CV244-

8   GPC(RBB), 2019 WL 2089509, at *9 (S.D. Cal. May 13, 2019) (quoting Cal. Welf. & Inst.

9   Code § 15610.30).  "A person or entity shall be deemed to have taken, secreted,

10  appropriated, obtained, or retained property for wrongful use, if among other things, the

11  person or entity knew or should have known that this conduct would likely be harmful to

12  the elder[.]" O'Brien as Tr. of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc., 362

13  F. Supp. 3d 778, 786 (N.D. Cal. 2018).  "Undue influence means excessive persuasion

14  that causes another person to act or refrain from acting by overcoming that person's free

15  will and results in inequity." Garrison, 2019 WL 2089509, at *9.

16         Plaintiff argues that defendants "discarded" the decedent's property by conducting

17  "flash sales" and by executing the Samsung Licensing Agreement.  Assuming that those

18  facts evidence "taking of property"—which is far from obvious itself—there is at least a

19  dispute of material fact as to whether defendants took that property for a "wrongful use,"

20  "with an intent to defraud," or by using "undue influence."  For that reason, the court

21  DENIES both parties' motions for summary judgment on plaintiff's eleventh cause of

22  action.

23         For a related reason, the court DENIES the parties' respective motions for

24  summary judgment on plaintiff's ninth cause of action under the California Probate Code.

25  As relevant here, § 859 of the California Probate Code states: "If a court finds that a

26  person . . . has taken, concealed, or disposed of the property by the use of undue

27  influence in bad faith or through the commission of elder . . . financial abuse, as defined

28  in Section 15610.30 . . . the person shall be liable for twice the value of the property

16

United States District Court
Northern District of California

1  recovered by an action under this part." Because plaintiff relies solely upon § 15610.30

2  to show a violation of the California Probate Code has occurred, and because the court

3  finds that material disputes of fact exist as to plaintiff's § 15610.30 claim, the court must

4  DENY the parties' motion on this dependent claim as well.

5            **g.    Claim Ten: Conversion**

6        Lastly, plaintiff moves for summary judgment on her claim for conversion.  Plaintiff

7  argues that upon the decedent's death in June 2016, ownership of the Works reverted to

8  plaintiff and the Trust.  Despite that fact, according to plaintiff, defendants continue to sell

9  the Works and have failed to return any Works in their possession.

10        "Conversion is the wrongful exercise of dominion over the property of another.

11  The elements of a conversion claim are: (1) the plaintiff's ownership or right to

12  possession of the property; (2) the defendant's conversion by a wrongful act or

13  disposition of property rights; and (3) damages[.]"  Lee v. Hanley, 61 Cal. 4th 1225, 1240,

14  (2015) (internal quotation marks omitted).

15        Here, the only evidence plaintiff cites is a screenshot of defendants' website,

16  fanhophotography.com, which lists certain Fan Ho photographs and related items for

17  sale.[5]  Dkt. 104-7, Ex. XI.  That, by itself, does not prove any of the three elements of

18  conversion.  Because plaintiff has failed to meet her burden, the court DENIES plaintiff's

19  motion with respect to her claim for conversion.

20                            **CONCLUSION**

21        For the foregoing reasons, the court (1) GRANTS Greene's motion to quash

22  service and DISMISSES Greene from this action WITHOUT PREJUDICE; and (2)

23  DENIES all of the parties' other motions in their entirety.

24        This case is referred to the ADR unit for mediation.  The mediation must be

25

---

26  [5] Plaintiff also asserts that defendants admitted "to having at least 231 Works in their possession as of January 1, 2015."  Dkt. 104 at 3.  That assertion not only lacks

27  evidentiary support but is also irrelevant.  Defendants were authorized to possess the Works in January 2015 because the Termination Notice was not delivered until October

28  of that year.

completed within 30 days of this order.

**IT IS SO ORDERED.**

Dated: June 7, 2019

_____

PHYLLIS J. HAMILTON
United States District Judge